Argued and submitted April 8, reversed and
remanded to the Court of Appeals July 1, 1980

In the Matter of the Compensation of

WRIGHT,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND,
*Respondent.*

(WCB 77-657, CA 14540, SC 26685)

613 P2d 755

David R. Vandenberg, Jr., Klamath Falls, argued the cause and filed the brief for petitioner. With him on the brief was Bradford J. Aspell, of Boivin, Boivin & Aspell, Klamath Falls.

Darrell E. Bewley, Associate Counsel, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, Salem.

Before Denecke, Chief Justice, and Howell, Lent and Peterson, Justices.

LENT, J.

**LENT, J.**

The issues presented in this case involve the presumption created for the benefit of firefighters in Oregon's occupational disease law, ORS 656.802.

We allowed review to consider the following questions:

(1) What is the procedural effect of the firefighters' presumption in ORS 656.802?

(2) Does the holding in *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979) apply to a firefighter entitled to the presumption in ORS 656.802?

ORS 656.802 states in relevant part:

"(1) As used in ORS 656.802 to 656.824, 'occupational disease' means:

" * * * * *

"(b) Death, disability or impairment of health of firemen of any political division who have completed five or more years of employment as firemen, caused by any disease of the lungs or respiratory tract, hypertension or cardiovascular-renal disease, and resulting from their employment as firemen.

"(2) Any condition or impairment of health arising under paragraph (b) of subsection (1) of this section shall be presumed to result from a fireman's employment. However, any such fireman must have taken a physical examination upon becoming a fireman, or subsequently thereto, which failed to reveal any evidence of such condition or impairment of health which preexisted his employment. Denial of a claim for any condition or impairment of health arising under paragraph (b) of subsection (1) of this section must be on the basis of medical or other evidence that the cause of the condition or impairment is unrelated to the fireman's employment."

The claimant, a former fireman, filed his claim in November, 1976. The insurer, State Accident Insurance Fund (SAIF), denied the claim in January, 1977. The claimant requested a hearing which was held on August 31, 1978. The referee on November 13,

1978, issued his opinion and order finding the claim to be compensable. SAIF requested review by the Workers' Compensation Board, and on May 4, 1979, the Board affirmed and adopted the opinion and order of the referee. SAIF requested judicial review, ORS 656.298, and the Court of Appeals reversed the Board, finding the claim not to be compensable. *Wright v. SAIF,* 43 Or App 279, 602 P2d 1086 (1979). We allowed the claimant's petition for review, ORS 2.520, 288 Or 527 (1979). We reverse the Court of Appeals.

■ We are bound by the Court of Appeals' findings of fact, insofar as resolution of conflicts in the evidence are concerned. *Sahnow v. Fireman's Fund Ins. Co.,* 260 Or 564, 491 P2d 997 (1971). Our reading of the Court of Appeals' opinion reveals that the court found that the evidence established the facts necessary to give rise to the presumption. That court found:

(1) Claimant had a "disability or impairment of health." ORS 656.802(1)(b).

(2) Claimant was a fireman of a political subdivision (City of Klamath Falls) who had completed five or more years of employment (1967-1976).

(3) Claimant's disability or impairment of health was caused by "pericardial (heart-related) and pleuritic (lung-related) pains[.]" 43 Or App at 281, 602 P2d at 1087.

(4) Claimant had "undergone medical examinations prior to his employment which had revealed no cardiac or respiratory problems."[1] *id.*

That court further found that claimant first experienced the pleuritic pain shortly after a "serious fire" at which he had breathed super-heated smoke.

The court then turned to a discussion of evidence bearing upon the relationship of claimant's employment to the cause of his condition or impairment:

---

[1] The language quoted from the Court of Appeals' opinion, while not in the exact terms of the statute, is equivalent to the statutory language which requires that the fireman shall have undergone a physical examination upon becoming a fireman which failed to reveal any evidence of a preexisting condition or impairment of the kind described.

"* * * The heart pains, he testified, had begun before the fire.

"Early in the course of treatment the treating doctor suspected the pains were caused by a viral infection of the pericardium, the membrane surrounding the heart. The infection was thought to have affected both the pericardial and pleural membranes, causing heart and respiratory pain. In a letter to SAIF in late 1976, the treating doctor dismissed the idea that the condition arose out of the claimant's employment, stating flatly that '[t]he disease obviously was not caused by his work.' At the same time, the doctor acknowledged that work aggravated the pain: 'He has had aggravation, however, of chest pain on working long hours and has had a fall which seemed to make his chest pain worse. It would seem reasonable to assume that his pain was aggravated by his work activities.'

"The continuation of the claimant's pain has baffled the doctors who have dealt with his case. He was tested at the Mayo Clinic, the University of Oregon Health Sciences Center, and the Portland Pain Center. Open-heart surgery relieved the pericardial pain for a short while. Tests on pericardial tissue excised during surgery did not aid diagnosis. The results of psychological testing at the Pain Center suggested the possibility that a fear of death and an underlying desire to avoid a return to his dangerous occupation may be the psychosomatic cause of the continuation of the pain. The suggestion, however, was in the nature of speculation, not scientific conclusion. Otherwise, the diagnoses resulting from tests and surgery were that the condition was idiopathic (that is, of no known origin) or organic."

The Court of Appeals held that the firefighters' presumption in ORS 656.802 disappeared when evidence was introduced to dispute the presumption. That court then weighed the evidence, according the presumption no consideration, and concluded the claimant's condition was not caused by the claimant's occupation. The court also concluded that although the evidence showed that firefighting stimulated the claimant's pain, there was no evidence that the

firefighting aggravated the claimant's underlying condition, therefore, under this court's holding in *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979), the claim was not compensable.

## PROCEDURAL EFFECT OF THE PRESUMPTION

The firefighters' presumption was added to ORS 656.802 in 1961. Or Laws 1961, ch 583, § 1. The proponents intended to give relief to firefighters because statistical studies indicated firefighters were much more likely to suffer from heart and lung diseases due to exposure to smoke and gases under strenuous conditions. Minutes, Senate Labor and Industries Committee, HB 1018, March 8, 1961. The presumption was drafted as a "disputable presumption" with the intent that the presumption not be conclusive. Minutes, House Labor and Industries Committee, February 2, 1961, p 2.

In 1977, the firefighters' lobby proposed amendments to ORS 656.802 because they felt that "the legislative intent was not carried out" in case law. Minutes, Senate Labor, Consumer and Business Affairs Committee, SB 701, April 13, 1977, pp 2-3. The amended statute deleted the word "disputable" and added the sentence that a claim could be denied only on the basis of medical or other evidence that the cause of the condition or impairment is unrelated to the fireman's employment. Or Laws 1977, ch 734, § 1.

We agree with the conclusion of the Court of Appeals that the 1977 amendment was intended to clarify rather than modify the preexisting statute. 43 Or App at 283. The presumption remains disputable, as evidenced by the last sentence of the amended statute.

The operation of a disputable presumption is described in ORS 41.310, 41.340, and 41.360:

ORS 41.310:
"Indirect evidence is of two kinds:
    (1)   Inferences.
    (2)   Presumptions."

ORS 41.340:

"A presumption is a deduction which the law expressly directs to be made from particular facts."

ORS 41.360:

"All presumptions *other* than conclusive presumptions are satisfactory,[2] unless overcome. They are disputable presumptions, and may be controverted by other evidence, direct or indirect, but unless so overcome, the jury is bound to find according to the presumption. * * *."

The parties agree that these statutes describe the operation of the disputable presumption for firefighters in ORS 656.802(2).

In *Wyckoff v. Mutual Life Ins. Co.,* 173 Or 592, 147 P2d 227 (1944), this court examined the procedural operation of a disputable presumption. The court noted that Professor Thayer and Professor Wigmore had been exponents of the theory that when any evidence is introduced to rebut the presumption, the presumption disappears. 173 Or at 596-597. The court rejected that theory and concluded that the plaintiff was entitled to have the court instruct the jury as to the existence of the presumption against suicide. 173 Or at 598, 607-608.

---

[2] The connotations of the use of the word "satisfactory" are not clear. A line of reasoning is suggested by the grouping of the sections of the code concerning evidence. These groupings have been substantially consistent since the 1862 compilation of Deady. From that time to the present we have had a section in the various compilations of our statutes on evidence describing that evidence which is "satisfactory." *See,* L. 1862, D. § 666; H. § 676; B. & C. § 688; L. O. L. § 697; O. L. § 697; O. C. 1930, § 9-112; § 2-111, O. C. L. A.; ORS 41.110. There are minor variations in the wording of those sections but none which appear to espouse a change in meaning. ORS 41.110 provides:

"Satisfactory evidence is that which ordinarily produces moral certainty or conviction in an unprejudiced mind. It alone will justify a verdict. Evidence less than this is insufficient evidence."

It may fairly and logically be argued that the legislature of this state has always intended a presumption to suffice to establish a fact to a moral certainty, a degree of persuasion which this court has found to be beyond that required in a civil case in *Cook v. Michael,* 214 Or 513, 330 P2d 1026 (1958).

The Thayer-Wigmore theory has been called the "bursting bubble" theory of presumptions. This theory has been soundly criticized because it gives presumptions an effect that is too "slight and evanescent" in light of the policy reasons for creation of presumptions.[3] Morgan and Maguire, *Looking Backward and Forward at Evidence,* 50 Harv. L Rev 909, 913 (1937). McCormick on Evidence 822 (2nd Ed 1972).

Professor Morgan advanced a theory of presumptions which challenged the Thayer-Wigmore theory. Morgan maintained that once a party established the basic facts giving rise to a presumption, the burden of persuasion on that issue shifted to the opponent of the presumption. Morgan, *Some Observations Concerning Presumptions,* 44 Harv. L Rev 906, 927 (1931); Morgan, *Instructing the Jury Upon Presumptions and Burden of Proof,* 47 Harv. L Rev 59 (1933). In line with his theory, Professor Morgan in 23 Or L Rev 269 (1944) criticized that aspect of the *Wyckoff* decision in which the court approved the jury instruction that the plaintiff had the burden of proof of death by accident and not suicide. He rightly argued that instruction *contradicted* the instruction that the presumption against suicide required a finding of death by accident unless the evidence of suicide has overcome the presumption.

In *U. S. Nat'l Bank v. Lloyd's,* 239 Or 298, 307, 382 P2d 851, 396 P2d 765 (1964), this court acknowledged the soundness of Professor Morgan's criticism; however, the court did not adopt the Morgan approach. The court concluded that ORS 41.360 binds the jury to find according to the presumption only when *no evidence* opposing the presumption has been introduced. 239 Or at 324-325. That conclusion was based upon a discussion of the legislative history of ORS 41.360. The court found that the forerunner statute was extracted by Deady from Greenleaf's Treatise on the Law of Evidence. The court quoted from Greenleaf

---

[3] The policy considerations for creation of presumptions include, e.g., procedural fairness, probabilities, and promotion of certain social policies. *See,* McCormick on Evidence, 806-807 (2d Ed 1972).

" 'if *no opposing evidence* is offered, the jury are bound to find in favor of the presumption.' " (emphasis added by the court, 239 Or at 325)

Greenleaf's full sentence from which that quotation was taken follows:

"In this mode, *the law* defines the nature and amount of the evidence, which it deems sufficient to establish a *prima facie* case, and to throw the burden of proof on the other party; and if no opposing evidence is offered, the jury are bound to find in favor of the presumption." (Greenleaf's italics)

What may have been meant by Deady and the legislature in relying upon Greenleaf is not at all clear when one looks at the full sentence rather than the last clause.

■ We hold that in a civil case[4] the statutory scheme concerning disputable presumptions requires that when the basic facts giving rise to the presumption are established, the presumption binds the jury if there is no opposing evidence. If there is opposing evidence, the trier of fact must weigh the evidence, giving the presumption the value of evidence, and determine upon which side the evidence preponderates.[5]

---

[4] A presumption in criminal cases has different consequences due to constitutional requirements. *See, State v. Stilling,* 285 Or 293, 297, 590 P2d 1223 (1979).

[5] This obviously does not answer the question as to which party prevails if the evidence is in equipoise. This case is before only four members of the court, and the four are not in agreement as to the result if the evidence is equally balanced. Some believe that the theory advanced by Professor Morgan is compelled by Oregon statutes. Others believe that the burden of proof must remain throughout on the party having the affirmative of the issue, despite the presence of the word "overcome" in ORS 41.360, and therefore if the evidence is equally balanced, the presumption does not bind the trier of fact and the party having the affirmative of the issue must lose. As a matter of judicial policy we believe the resolution of the question discussed in this footnote should await a case in which a majority of the full court is agreed upon the effect of the statute.

The matter is presently being considered by the legislature's Advisory Committee on Evidence Law Revision and, therefore, the question may be clearly resolved by the next legislative assembly.

■      As noted, *supra,* the Court of Appeals found that the claimant established the basic facts which give rise to the presumption in ORS 656.802(2). This means that the presumption "disappears" only if there is evidence which establishes the nonexistence of one or more of the basic facts giving rise to the presumption. For example, if in this case the evidence established that the claimant had not been employed by a political subdivision or had not been so employed for the requisite period of five or more years, the presumption would "disappear." In this case there was no evidence to challenge any of those basic facts which give rise to the presumption and it cannot be held to disappear.

The presumption is established as to each disease listed in ORS 656.802(1)(b) from which the claimant suffers. In this case the Court of Appeals found that the claimant had both heart related and lung related conditions or impairments of the kind described in the statutes; therefore, to the extent that each impairment can be segregated, the presumption operates as to each.

The presumption then imposes on the opponent SAIF the burden of producing opposing evidence that the cause of both claimant's lung condition and heart condition is unrelated to the fireman's employment.

ORS 656.802(2) prescribes what kind of opposing evidence is required. The statute directs that "denial of a claim for any condition or impairment * * * must be on the basis of medical or other evidence that the cause of the condition or impairment is unrelated to the fireman's employment." Most of the evidence discussed by the Court of Appeals states or implies only that claimant's condition is "idiopathic," or of unknown origin. These diagnoses are simply a confession of an inability to identify a cause of claimant's impairments rather than evidence that claimant's condition or impairment is *unrelated* to his employment.[6]

---

[6] We have not overlooked that the Court of Appeals stated:

"We acknowledge that the physicians cannot affirmatively state

■ There is evidence, however, that the cause of claimant's impairments is unrelated to his employment. As noted by the Court of Appeals, a treating doctor in a letter in 1976 opined that the disease was not caused by the work.[7] The Court of Appeals held that this evidence was sufficient to "eliminate" the presumption. We conclude that the word "eliminate" in the context of the opinion was used because of that court's conclusion of law that the statutory presumption "falls with the *introduction* of opposing evidence." (our emphasis) 43 Or App at 283, 602 P2d at 1088. We do not believe that the Court of Appeals used "eliminate" to mean "overcome" as is required by the statute. The erroneous premise that the presumption, in

---

the cause of the disease, but we also note that they consider the cause to be organic, or in other words, to be not work related." 43 Or App at 284, 602 P2d at 1089.

We find this last conclusion as to the meaning of "organic" puzzling. If it is one drawn by the court from a peculiar use of the word by one or more of the medical witnesses it is within the power of the trier of fact to ascribe the same meaning. We find no dictionary definition, however, containing any hint of such a meaning for the word "organic." Dorland's Illustrated Medical Dictionary, Twenty-Fifth Edition, (1974) defines "organic":

> "1. Pertaining to an organ or the organs. 2. having an organized structure. 3. arising from an organism. 4. pertaining to substances derived from living organisms. 5. denoting chemical substances containing carbon. 6. pertaining to or cultivated by the use of animal or vegetable fertilizers, rather than synthetic chemicals."

The literature contains many examples of the use of the word "organic" to distinguish a condition from one which is "psychic." For instance, impotence is often characterized as being either "organic" or "psychic." In this sense the diagnostician on the one hand has identified a pathological condition as the cause of the impotence, and, on the other hand, has failed to find any pathology but has identified a psychological element as the cause of the impotence. If the record or some proper source of judicial notice, ORS 41.410 to 41.480, ascribes the meaning "not work related" to the word "organic," we can have no basis to quarrel with the trier of fact in so using the word; otherwise, we cannot believe that use is justified.

---

[7] That court does not mention a later (May 16, 1978) contradictory opinion by the same doctor, in which he expresses the opinion that claimant's conditions do amount to an occupational disease when the presumption is applied.

effect, disappears completely with the "introduction" of opposing evidence served to misdirect the thrust of that court's inquiry as to the effect to be afforded the presumption. It will be necessary, consequently, to remand this case to the Court of Appeals for further factual determinations that court is required to make, ORS 656.298, which cannot be made by this court. *Sahnow v. Fireman's Fund Ins. Co., supra.*

### APPLICATION OF THE PRESUMPTION TO FIREFIGHTERS' CONDITION OR IMPAIRMENT

The Court of Appeals stated that there was no evidence that firefighting aggravated the claimant's underlying condition, and, therefore, under the standards established in *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979), the claimant's symptoms were noncompensable.[8]

The statutes relevant to the decision in *Weller v. Union Carbide, supra,* were ORS 656.005(8), 656.802(1)(a), and 656.804, which make an "injury," "disease or infection" compensable if it either requires medical services or results in disability.[9] The

---

[8] In *Weller* we held that in order to prevail a claimant would have to prove by a preponderance of evidence that (1) his work activity or conditions (2) caused a worsening of his underlying disease (3) resulting in an increase in his pain (4) to the extent that it produces disability or requires medical services. 288 Or at 35. In *Weller* our attention was focused upon a claim for compensation for medical services and disability necessitated by symptomatology, namely, pain. The described four elements must necessarily be established to make such a claim compensable. If the disability or need for medical services is not dependent upon the presence of pain, it would be unnecessary to establish element number (3).

[9] ORS 656.005(8) provides:

"(8)(a) A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means.

"(b) A 'disabling compensable injury' is an injury which entitles the worker to compensation for disability or death.

"(c) A 'nondisabling compensable injury' is any injury which requires medical services only."

code provisions concerning firefighters, ORS 656.802(1)(b) and (2), were not considered in the *Weller* opinion.

■    ORS 656.802(1)(b) provides that an "occupational disease" means "death, disability or *impairment of health* of firemen * * *." (emphasis added) The language in ORS 656.802(2) provides that "any condition or impairment of health," arising under 656.802(1)(b) is presumed to result from a fireman's employment. This language is markedly different from the terms "injury, disease, or infection," and includes in the presumption of compensability a worsening of symptoms as well as a worsening of the underlying disease. To read the words "impairment of health" to exclude symptomatology would ignore the all-inclusive phrase chosen by the legislature. The condition of worsening of pain, if it requires medical services or results in disability, is compensable in the case of a firefighter if the other requirements of the statute are met.

The holding in *Weller v. Union Carbide, supra,* is inapplicable to the firefighters' presumption in ORS 656.802(1)(b) and (2). The Court of Appeals' holding on this issue is reversed.

Reversed and remanded to the Court of Appeals for factual determination of the compensability of claimant's heart-related and lung-related disabilities or impairments of health in light of our holding as to the effect of the statutory presumption.

ORS 656.802(1) provides:

"(1)   As used in ORS 656.802 to 656.824, 'occupational disease' means:

"(a)   Any disease or infection which arises out of and in the scope of the employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein.

"* * * * *."

ORS 656.804 provides:

"An occupational disease, as defined in ORS 656.802, is considered an injury for employes of employers who have come under ORS 656.001 to 656.794, except as otherwise provided in ORS 656.802 to 656.824."