Argued and submitted June 20, 1990, reversed and remanded for reconsideration June 5, reconsideration denied August 21, petition for review denied September 24, 1991 (312 Or 150)

In the Matter of the Compensation of
Donna E. Aschbacher, Claimant.

AETNA CASUALTY CO.
and St. Vincent Hospital,
*Petitioners,*

*v.*

Donna E. ASCHBACHER,
*Respondent.*

(WCB 88-07257; CA A61687)

812 P2d 844

Thaddeus J. Hettle, Portland, argued the cause for petitioners. With him on the brief was Scheminske & Lyons, Portland.

J. Michael Casey, Portland, argued the cause for respondent. With him on the brief was Doblie & Associates, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

### DEITS, J.

Employer seeks review of an order of the Workers' Compensation Board that reversed the referee and held that claimant's low back condition is compensable. The Board decided that, under ORS 656.802(1), claimant could receive benefits for worsened symptoms without establishing that her underlying disease had worsened, if she proved that her work was a material contributing cause of the worsened symptoms. Employer contends that the Board erred in its interpretation of the 1987[1] amendments to ORS 656.802(1), both with respect to its conclusion that the material contributing cause standard applies to this type of occupational disease claim and in its conclusion that it was not necessary to prove a worsening of claimant's underlying condition. We agree and reverse.

The facts are undisputed. At the time of the hearing, claimant was a 52-year-old phlebotomist who collected blood samples from hospital patients. She had worked full-time for twenty years before she left work in 1980. She returned to her job in 1984 and worked an average of two to three days per week. She stood or walked most of her shift. In December, 1987, she began to have pain in the calf of her lower right leg about four hours after beginning work. By March, 1988, the pain had worsened and was beginning earlier in her workday. Her physician referred her to Dr. Waller, a neurosurgeon, who diagnosed a degenerative spinal disc and a narrowing of the foramen lumbosacral disc space with foraminal stenosis on the right side. He said that the pain in the calf was a symptom of a preexisting low back condition that was caused by "normal degenerative changes with aging." Waller prescribed conservative therapy. However, claimant's pain continued, and she missed work. She filed a workers' compensation claim on March 4, 1988, for her low back condition. She left work on April 4, 1988, and, as of the time of the hearing, she had not returned to work. She continued to have pain in her right leg when she was on her feet for more than three hours at a time.

After a hearing on compensability, the referee decided that claimant had not proved a compensable occupational disease under ORS 656.802(1)(c). The Board reversed. It held that,

---

[1] The 1987 amendments to ORS 656.802 became effective January 1, 1988. Or Laws 1987, ch 713, § 4.

under the 1987 amendments to ORS 656.802(1), a claimant no longer needs to prove that work was *the major* contributing cause of a condition, as had been required under *Dethlefs v. Hyster Co.,* 295 Or 298, 310, 667 P2d 487 (1983). Instead, it determined that a claimant only has to prove that the work was *a material* contributing cause of the condition. The Board also decided that, under the amended statute, claimant did not need to prove that her underlying disease had worsened, as had been required under *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979). Instead, it concluded that a claim is compensable even if the claimant has only worsened symptoms, if they are disabling and require medical services. It then held that, even though claimant's underlying disease had not worsened, her claim is compensable because her work materially contributed to worsened symptoms that are disabling and require medical services.

■       Employer first argues that the Board erred in concluding that the 1987 amendments to the occupational disease statute require claimant only to prove that her employment was a material contributing cause of her condition, rather than the major contributing cause. Before the 1987 amendments, "occupational disease" was defined in ORS 656.802(1)(a) as

"[a]ny disease or infection arising out of and in the scope of employment, and to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein."

In 1987, the definition of "occupational disease" was amended to read:

"(a)   *Any disease or infection* arising out of and in the course of employment caused by ingestion of, absorption of, inhalation of or contact with dust, fumes, vapors, gasses, radiation or other conditions or substances *to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein,* and which requires medical services or results in physical or mental disability or death.

"(b)   Any mental disorder arising out of and in the course of employment and which requires medical services or results in physical or mental disability or death.

"(c)   Any series of traumatic events or occurrences arising out of and in the course of employment which requires medical

services or results in physical disability or death." (Emphasis supplied.)

The Board concluded that the language in ORS 656.802(1)(a), "to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment," had been the foundation for the court's conclusion in *Dethlefs v. Hyster Co., supra,* 295 Or at 307, that occupational disease claims must be considered under the major contributing cause standard. The Board reasoned that, because the 1987 legislature included the same phrase in subsection (a), which governs exposure to substances, but did not use it in subsections (b) and (c), which relate to claims for mental disorders and "a series of traumatic events," occupational disease claims under subsections (b) and (c) need only be considered under the material contributing cause standard. It then went on to conclude that, because in its view the language of the statute was clear, it was unnecessary to consider the legislative history of the amendment.

Although the court in *Dethlefs* did refer to the quoted phrase, it concluded that "[t]he *text* of the statute does not provide a clear answer as to compensability." *Dethlefs v. Hyster Co., supra,* 295 Or at 309. (Emphasis in original.) In its analysis of the statute, the court first rejected the view that the "proper test is whether the disease was caused solely by the work environment." It also rejected the suggestions of *amicus curiae* that a claimant only needs to prove that on-the-job exposure was a material contributing cause. On the basis of its understanding of legislative history and the purpose of the statute, the court held that, for an occupational disease to be compensable, the work environment had to be its *major* cause. Accordingly, we do not think that *Dethlefs* compels the conclusion that omission of the quoted phrase from subsections (b) and (c) means that the standard of proof for occupational disease claims is *material* contributing cause. The subsections, in fact, say nothing about what the standard is. We conclude that the language of ORS 656.802(1)(b) and (c) is ambiguous and that, therefore, it is necessary for us to interpret it.

In interpreting a statute, the intention of the legislature is to be followed if possible. ORS 174.020; *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 581 P2d 50 (1978). The

legislative history of the 1987 amendments was well summarized in this case in the dissenting opinion of board member Ferris:

> "The amendments to ORS 656.802 were part of the 1987 House Bill 2271. The impetus for HB 2271, and a number of other bills introduced during the 1987 legislative session, was the 'Oregon Comeback' plan initiated by Governor Neil Goldschmidt. One of the primary goals of this plan was to streamline and otherwise reduce the cost of the workers' compensation system in Oregon in order to attract or retain business for the state. In accordance with this general purpose, one of the major objectives of HB 2271 was to restrict the compensability of mental stress claims. Tape Recording, Senate Committee on Labor, April 23, 1987, Tape 120, Side A at 164-66 (statement of Representative Shiprack, Chairman of the House Committee on Labor).

> "When HB 2271 was originally introduced, none of the paragraphs of the revised definition of an occupational disease contained the *Dethlefs* language or any other language expressing a quantum of contribution applicable to claims under the section. During public hearings conducted on the bill by the House Committee on Labor, some of the witnesses pointed out that the absence of such language created an ambiguity. Tape Recording, House Committee on Labor, March 6, 1987, Tape 49, Side A at 446-85 (testimony of Mr. Franceseoni); *Id.*, Tape 48, side B at 27-52 (testimony of Mr. Snarskis). One of these witnesses noted that if this ambiguity was construed to mean 'material contributing cause,' it would be much easier for claimants to establish the compensability of all occupational diseases, including stress-related mental disorders, and that this would be contrary to one of the major purposes of HB 2271."

After that, the legislature retained the previous and now disputed language in ORS 656.802(1)(a); however, it did not include it in the new subsections (b) and (c).

We find no guidance as to why the legislature used the language in subsection (a), but not in subsections (b) and (c). However, after reviewing the legislative history, we conclude that the legislature did not intend to change the standard of proof for the latter kinds of occupational disease claims. We hold that the standard of proof for proving all types of occupational disease claims under ORS 656.802(1), as amended in 1987, remains the major contributing cause.

As discussed above, the purpose of the 1987 legislation was to reduce the costs of workers' compensation and, specifically, to restrict the compensability of stress claims. The Board's interpretation of ORS 656.802(1) would do just the opposite. There is no indication in the legislative record that the legislature intended that result. Not only would the Board's interpretation of the statute result in a significant change in the standard of proof for occupational disease claims, it would create different levels of proof for different types of occupational disease claims. Claims based on exposure to toxic fumes under subsection (a) would have to be proven under the major contributing cause standard, but claims based on mental disorders or "a series of traumatic events" would only need to be proven under a material contributing cause standard. There is no rationale for that distinction, and there is no indication in the legislative history that that result was intended.

Our conclusion is also supported by the subsequent legislative history. As stated in *1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 358 n 15, 703 P2d 297 (1985):

> "Amendments to an act may be resorted to for the discovery of the legislative intent in the enactment amended, *Kaiser Cement v. Tax Com.,* 250 Or 374, 378, 443 P2d 233, 235 (1968), and if the amendment 'follows immediately and after controversies have arisen as to the true construction of the prior law it is entitled to great weight' in interpreting the amended statute. *Kaiser Cement [v. Tax Com., supra,]* 250 Or at 378, 443 P2d at 235, *quoting Holman Tfr. SPPLE Co. v. Portland,* 196 Or 551, 566, 249 P2d 175, 182, 250 P2d 929 (1952)."

After the 1987 amendments were adopted, they became the subject of controversy. In May, 1990, the special session of the legislature again amended the statute. It is apparent from the record of the 1990 amendments that the legislature never intended to change the standard of proof for occupational disease claims in 1987. The 1990 Report from the Governor's Workers' Compensation Labor-Management Advisory Committee to the Legislature said:

> "The Committee's proposed language is intended to allow such claims where the worker is able to show the work activity was the *major contributing cause* of the disease or its worsening. This expressly states the law as it had been interpreted by the courts prior to a 1988 Workers Compensation Board opinion which interpreted a statutory ambiguity to apply the

material contributing cause test. The Committee's proposal is intended to do nothing more than restore what had been well settled case law in Oregon for many years." Minutes, Interim Special Workers' Compensation Committee, May 3, 1990, Ex B.

The "opinion which interpreted a statutory ambiguity," referred to in the report, is the Board's opinion in this case.

During the 1990 Interim Special Committee hearing, a representative of the American Federation of State, County and Municipal Employees on the Governor's Advisory Committee testified:

"There was a decision handed down that moved the standard to material contributing factor * * *. So we felt that was absolutely not the intent of the parties long term in the Worker's Comp system and needed to be changed. We needed to reinstate the previous standard that had existed for many years and was not a subject of major challenge * * *." Tape Recording, Interim Special Workers Compensation Committee, May 3, 1990, Tape 7, Side A at 390.

It is clear that the legislature believed that the "major contributing cause" standard for occupational diseases remained the law, until the Board decided this case. Representative Shiprack stated:

"I wrote that statute back in 1987 * * *. We're moving the law back in this to about a year ago, prior to a decision that I disagreed with at the Worker's Comp Board called the Aschbacher decision that's on its way to the Court of Appeals. I expect it will be overturned at that level. I'm going to support in any way I can that the decision be overturned and we're simply putting the law back to what it was as much as one year ago in the case of occupational disease." Tape Recording, Interim Special Workers Compensation Committee, May 3, 1990, Tape 7, Side A at 010.

The 1990 legislative history shows that it was never the legislature's intent to change the kind of proof required for occupational disease claims. The proof in this case should have been of a major contributing cause.

█        The Board also reversed the referee and concluded that a claimant may prove an occupational disease claim under ORS

656.802(1)(c) by showing a worsening of symptoms of a preexisting disease without also proving a worsening of the underlying disease. The Board held that claimant's condition was compensable, because it was shown that her work activities resulted in increased symptoms of her underlying low back condition, *i.e.,* leg pain. That holding is directly contrary to *Weller v. Union Carbide, supra,* at 288 Or 36, in which the Supreme Court held that proving a worsening of symptoms of a preexisting disease without establishing a worsening of the underlying disease does not establish a compensable occupational disease. The Board recognized the holding in *Weller* but concluded that it is inapplicable to occupational disease claims based on ORS 656.802(1)(c), enacted in 1987.

We conclude that the 1987 amendments did not affect the applicability of *Weller* and that claimant was still required to prove a worsening of her underlying condition. As discussed above, before the 1987 amendments an "occupational disease" was defined as

> "[a]ny disease or infection arising out of and in the scope of employment, and to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein."

After the 1987 amendments, subsection (a), relating to occupational disease claims based on exposure to substances, still included the language "any disease or infection." However, the new subsection (c) did not include that language. The Board concluded that the legislature's failure to use the term "any disease or infection" and its use of "series of traumatic events or occurrences" means that an occupational disease claim under subsection (c) may be established by proving increased symptoms of a preexisting disease without proving a worsening of the underlying condition.

As the Board recognized, the language of ORS 656.802(1)(c) does not directly address the question of whether a worsening of the disease must be proven. Therefore, it is again necessary to examine the legislative history of the change in the language of the statute. It appears from the legislative history that the purpose of the language "any series of traumatic events or occurrences" was to make it clear that workers' compensation claims involving physical overuse of a body part are to be treated as occupational diseases rather than as injuries.

In testimony before the Senate Labor Committee, a representative of the Oregon Trial Lawyers' Association was asked about the purpose of subsection (c). He replied:

"That is the overuse syndrome-type cases [*sic*] where there's not exposure to anything toxic or anything harmful but simply the overuse of a body part, a hip, an elbow and wrist, something of that nature, may — may become an occupational disease. And we deal with that now within the existing definition, but the House attempted to make a special definition so there would be no question that that was an occupational disease.

"Primarily, Madam Administrator, I believe that history shows there was a concern that a series of traumatic events should be considered an injury and not a disease because it is actually a series of — let's use the wrist, a series of traumatic events. A traumatic event is generally considered an injury but injury laws are considerably easier to prove than disease law, *and the House felt that those sorts of conditions should be under the more strict occupational disease standard. I argued for an injury standard, but it's here as an occupational disease. I hope I answered your question.*" Tape Recording, Senate Committee on Labor, April 30, 1987, Tape 133, Side A at 070-086. (Emphasis supplied.)

There is no indication in the legislative record of any intent to change the applicability of *Weller* to this type of occupational disease claim. It is unlikely that the legislature would make such a significant change in the law without making a record of it.

The Board relied on the court's reasoning in *Wright v. SAIF,* 289 Or 323, 613 P2d 755 (1980). However, *Wright* involved the interpretation of a different statutory scheme, and the court's reasoning does not support the Board's conclusion here. *Wright* involved a claim under *former* ORS 656.802(1)(b), which related to occupational disease claims by fire fighters and defined "occupational disease" as

"[d]eath, disability or impairment of health of fire fighters * * *, caused by any disease of the lungs or respiratory tract, hypertension or cardiovascular-renal disease, and resulting from their employment as fire fighters."

Under the fire fighter provisions of the Workers' Compensation Law, *any* "condition or impairment of health" is presumed to result from a fire fighter's employment. *Former* ORS 656.802(2). It was argued in *Wright* that, under *Weller,* a fire

fighter claimant must prove a worsening of an underlying disease in order for increased symptoms to be compensable. The court held that *Weller* is *not* applicable:

"ORS 656.802(1)(b) provides that an 'occupational disease' means 'death, disability or *impairment of health* of firemen * * *.' The language of ORS 656.802(2) provides that 'any condition or impairment of health,' arising under 656.802(1)(b) is presumed to result from a fireman's employment. This language is markedly different from the terms 'injury, disease, or infection,' and includes in the presumption of compensability a worsening of symptoms as well as a worsening of the underlying disease. To read the words 'impairment of health' to exclude symptomatology would ignore the all-inclusive phrase chosen by the legislature." 289 Or at 335. (Emphasis in original.)

Here, the Board concluded that the language "any series of traumatic events or occurrences" is comparable to the term "impairment of health" in the fire fighter statute. We disagree. As the court held in *Wright*, "impairment of health" is an extremely broad term and is markedly different from "injury, disease, or infection," which was analyzed in *Weller*. However, here, the pertinent language is not markedly different from the terms discussed in *Weller*. The word "traumatic" means injurious. *Webster's Ninth New Collegiate Dictionary* 1256 (1990). The language of the new subsection (c) was not all inclusive, as is "impairment of health." It is limited to occupational disease claims based on a series of injuries. We conclude that the 1987 enactment of subsection (c) did not make *Weller* inapplicable and that claimant had to prove a worsening of her preexisting disease.

Reversed and remanded for reconsideration.