Argued and submitted April 12, affirmed June 19, reconsideration denied
November 6, petition for review denied December 17, 1991 (312 Or 527)

In the Matter of the Compensation of
Chuck H. Sibley, Claimant.

Chuck H. SIBLEY,
*Petitioner,*

*v.*

CITY OF PHOENIX
and SAIF Corporation,
*Respondents.*

(88-09196; CA A65697)

813 P2d 69

James L. Edmunson, Eugene, argued the cause for petitioner. With him on the brief were James L. Francesconi and Francesconi & Associates, Portland.

David L. Runner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

De Muniz, J., concurring.

## BUTTLER, P. J.

Claimant seeks review of an order of the Workers' Compensation Board reversing the referee and concluding that he has not established an occupational disease claim.

The findings of the Board are supported by substantial evidence. In 1986, claimant, Chief of Police for the City of Phoenix, began suffering hypertension as a result of emotional or psychological stress due to fears concerning his job security. The only issue on review is whether, as a matter of law, claimant's stress-related hypertension is compensable as an occupational disease under ORS 656.802(1)(c).

As amended in 1987, ORS 656.802(1) provides:

"As used in this chapter, 'occupational disease' means:

"(a)   Any disease or infection arising out of and in the course of employment caused by ingestion of, absorption of, inhalation of or contact with dust, fumes, vapors, gasses, radiation or other conditions or substances to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death.

"(b)   Any mental disorder arising out of and in the course of employment and which requires medical services or results in physical or mental disability or death.

"(c)   Any series of traumatic events or occurrences arising out of and in the course of employment which requires medical services or results in physical disability or death."[1]

Claimant contends that various stress-causing incidents on the job were a "series of traumatic events or occurrences"

---

[1] The statute was amended in 1990, and currently provides:

"(1) As used in this chapter, 'occupational disease' means any disease or infection arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death, including:

"(a) Any disease or infection caused by ingestion of, absorption of, inhalation of or contact with dust, fumes, vapors, gases, radiation or other substances.

"(b) Any mental disorder which requires medical services or results in physical or mental disability or death.

"(c) Any series of traumatic events or occurrences which requires medical services or results in physical disability or death."

and that the claim is compensable under subsection (1)(c). The Board held that subsection (1)(c) refers only to a series of physical traumas and that claimant's claim does not meet that requirement. It also held that the claim is not compensable under either ORS 656.802(1)(a) or (1)(b), and claimant does not dispute that holding.

No statute defines the phrase "traumatic events or occurrences." Claimant contends that subsection (1)(c) is a "catch all," intended to define a "general category" of occupational disease and to "preserve the various diseases which were experienced generally in the work force." He argues that, in amending ORS 656.802, the 1987 legislature intended only to codify existing case law and practice and did not intend to eliminate "an entire category of occupational disease" claims, such as claims for cardiovascular disease caused by emotional stress. He urges that the term "traumatic event" must be read to encompass emotional trauma, so that his claim, which is not compensable under subsection (1)(b) because it does not involve a mental disorder, is included within the definition of occupational disease.

We are not persuaded by claimant's rationale. What the legislature intended to do with the category of claims that claimant describes is not the subject of this review. The only question raised by the assignment of error is whether *this* claim falls within ORS 656.802(1)(c). Reading the subsection in the broad way that claimant suggests to apply to emotional, as well as to physical, traumas would extend its coverage to circumstances that are described in subsection (1)(b), to which a different standard of proof applies. ORS 656.802(2).[2]

---

[2] ORS 656.802(2) provides:

"Notwithstanding any other provision of this chapter, a mental disorder is not compensable under this chapter:

"(a) Unless the employment conditions producing the mental disorder exist in a real and objective sense.

"(b) Unless the employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation or reasonable disciplinary, corrective or job performance evaluation actions by the employer, or cessation of employment.

"(c) Unless there is a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community.

"(d) Unless there is clear and convincing evidence that the mental disorder arose out of and in the course of employment."

We do not believe that the legislature intended that result and conclude that the trauma must be physical in order to be compensable under subsection (1)(c).

Assuming that the subsection is ambiguous, the legislative history confirms our conclusion. Legislative minutes about subsection (1)(c) leave no doubt that it was adopted for the express purpose of covering "micro-trauma" or "over-use" syndromes, such as degenerative back conditions, carpal tunnel syndrome and hearing loss, caused by repetitive *physical* trauma or activity. *See, e.g.,* Minutes, House Task Force on Occupational Diseases, October 8, 1986, 19, 23 and Exh I; Tape Recording, Senate Committee on Labor, October 8, 1986, Tape 133, Side A at 36-87. The Board did not err in its interpretation. *See Aetna Casualty Co. v. Aschbacher,* 107 Or App 494, 812 P2d 844 (1991).

Affirmed.

**DE MUNIZ, J.,** concurring.

I agree with the majority that the legislative history compels the conclusion that claimant's hypertension does not come within ORS 656.802(1)(c). *See also Aetna Casualty Co. v. Aschbacher,* 107 Or App 494, 812 P2d 844 (1991). However, I am perplexed about why the legislature excluded an entire category of workers with physical problems requiring medical treatment resulting from on-the-job emotional stress. Claimant has made no constitutional challenge to that legislative determination.

Rossman, J., joins in this concurrence.