**UNITED STATES of America, Plaintiff,**

v.

**Jose Capella QUIÑONES, Defendant.**

**No. CRIM 99–308(DRD).**

United States District Court, D. Puerto Rico.

Feb. 4, 2000.

---

Esther Castro–Schmidt, San Juan, PR, Luis A. Cintron–Lopez, Aguadilla, PR, Yolanda A. Collazo–Rodriguez, San Juan, PR, Linda George, Hackensack, NJ, Ernesto Hernandez–Milan, Hato Rey, PR, Robert W. Odasz, Carolina, PR, Johnny Rivera–Gonzalez, Hato Rey, PR, Luis R. Rivera–Rodriguez, Hato Rey, PR, David W. Roman, Edif El Caribe, San Juan, PR, Ivan Vega–Lassalle, Hatillo, PR, for defendant.

Jacabed Rodriguez–Coss, U.S. Attorney's Office District of P.R., Criminal Division, Hato Rey, PR, for plaintiff.

### AMENDED OPINION AND ORDER

DOMINGUEZ, District Judge.

Defendant, José Capella Quiñones, has requested the court to revisit the determination of Magistrate Judge J. Antonio Castellanos on reconsideration detaining Defendant without bail, (Docket No. 41). The Magistrate Judge on reconsideration determined that there was probable cause that defendant had committed an offense for which a maximum term of imprisonment of more than ten years is prescribed under 21 U.S.C. 841(a)(1) and that the defendant had failed to rebut the statutory presumption of detention that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community, 18 U.S.C. 3142(e). The Magistrate further found that there is a serious risk that the defendant will endanger the safety of another person or the community. The Magistrate Judge on reconsideration[1] considered evidence that was not produced at the initial hearing because the United States had not been properly noticed and consequently reconsidered its initial order granting bail to the defendant (Docket No. 31). The reconsidered order thus denied bail to the codefendant, José Capella Quiñones, and consequently he was ordered detained.

The court is required to make a de novo review of the contested Detention Order. *United States v. Tortora*, 922 F.2d 880, 883 n. 4 (1st Cir.1990).[2]

---

1. This court does not detect any abuse of discretion of the Magistrate Judge in reopening the hearing because of the reasons stated by the government to this court, "there was absolutely no notice to the government of that particular hearing," (Docket No. 69 at 15), referring to the fact that codefendant had then two bail cases before different Magistrate Judges and the hearing in this particular case 99–308 was not duly notified to the government.

2. The court also notes the illustrated opinion of District Judge Keeton in *United States v. Phillips*, 732 F.Supp. 255, 258–259 (D.Mass.

The court starts the required analysis with the indictment wherein the defendant is one of six individuals charged with a conspiracy to import to the United States large quantities of cocaine and marihuana from the Dominican Republic in violation of 21 U.S.C. 952(a) (in excess of five kilograms of cocaine and one hundred kilograms of marihuana). Defendant is also charged in another count with a conspiracy to possess with intent to distribute in excess of five kilograms of cocaine and one hundred kilograms of marihuana in violation of 21 U.S.C. 841(a)(1).

The Bail Reform Act of 1984, 18 U.S.C. 3141 et seq. at § 3142(f)(1)(c) sets forth the presumption that no condition or combination, of conditions will reasonably assure the appearance of the accused as required and the safety of the community if there is probable cause to believe that the person committed an offense for which the term of imprisonment of ten or more years is prescribed in the Controlled Substance Act, 21 U.S.C. 801. In the instant case the presumption has been triggered because the quantities of drugs alleged in the indictment mandate a ten-year minimum sentence.

■ The presumption has a "significant practical effect." *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985). The presumption does not shift the burden of persuasion to the defendant, because the government retains the burden throughout. The defendant, however, once the presumption is triggered, is required to carry the burden of production. *United States v. Jessup*, 757 F.2d at 380–384.

The presumption created is that "... it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten or more years is prescribed in the Controlled Substances Act, (21 U.S.C. 801 et seq.)" 18 U.S.C. 3142(e). The presumption created is of "flight" and "danger." *Jessup*, 757 F.2d at 381.

■ Once the presumption is triggered, the defendant is required to produce "conflicting evidence" to undercut the legislative purpose of the presumption. *United States v. Jessup*, 757 F.2d at 383, (but it is not merely any evidence that destroys the presumption since the "bursting bubble theory" was rejected by then Chief Justice Bryer at *United States v. Jessup*, 757 F.2d at 382–383). The "intermediate position" adopted in *Jessup* requires defendant to produce "conflicting evidence" as to "danger" and "flight" [3] and then the court "determine[s] on which side the evidence preponderates." *United States v. Jessup*, 757 F.2d at 383 citing *Wright v. State Accident Insurance Fund*, 289 Or. 323, 613 P.2d 755, 759–60 (1980).

Trial judges were reminded in *United States v. Jessup*, 757 F.2d at 384, that Congress in establishing the presumption found that "flight to avoid prosecution is particularly high among persons charged with major drug offenses." Senate Judiciary Report # 225, 98th Congress 1984 p. 20, 1984 U.S.Code Cong. & Admin.News, p. 23, and further that "drug traffickers often have established ties outside the United States ... [and] have both the resources and foreign contacts to escape to other countries." [Id].

The court in *United States v. Jessup*, *Id.*, stated the following as to the method of "rebutting the presumption": "In order to 'rebut' the presumption, the defendant

---

1990), requiring "the court to exercise independent consideration of all facts properly before it."

**3.** *Jessup*, 757 F.2d at 383 citing the theory of Hecht and Pinzler, Rebutting Presumptions:

Order Out of Chaos, 58 B.U.L.Rev. 527 (1978); *Jessup* (Id.) states that "the House of Judiciary adopted this sort of 'intermediate position' ...."

must produce some evidence; the magistrate or judge should then still keep in mind the fact that Congress has found that [drugs] offenders, as a general rule, pose special risks of flight." Even after a defendant has produced evidence to rebut the presumption, "the presumption does not disappear, but rather retains evidentiary weight—the amount depending on how closely defendants' case resembles the Congressional paradigm, *Jessup*, 757 F.2d at 387—to be considered with other relevant factors." *United States v. Palmer-Contreras*, 835 F.2d 15, 17 (1st Cir.1987).

█ Finally, in making its final determination after receiving the rebuttal pursuant to § 3142(g), the judicial officers must consider among other factors "the nature and circumstance of the offense," "weight of the evidence," "history and characteristics of the person including ... character, physical and mental condition, family history ... past conduct." *United States v. Jessup, Id.*

█ In the instant case the court listened and frequently replayed several tape recordings of the defendant in another criminal case, 99-161, before U.S. District Judge Salvador Casellas, also involving drug transactions. Although in some of the tapes played the codefendant is not a participant, the court concludes that the tapes are strong evidence of narcotics criminal activity subject to jury credibility and weight evaluation. The court explains. In several of the tapes the defendant although a participant does not respond to the coded incriminating drug related statements of another conspirator, notwithstanding the tapes incriminate codefendant because a criminal conspirator rarely speaks about criminal activity with an innocent stranger. *United States v. Batista-Polanco*, 927 F.2d 14, 18 (1st Cir.1991) ("criminal conspirators do not often welcome innocent nonparticipants as witnesses to their crimes.");

*United States v. Cuevas-Esquivel*, 905 F.2d 510, 515 (1st Cir.1990); *United States v. Montilla-Rivera*, 115 F.3d 1060, 1064 (1st Cir.1997) ("no effort was made to keep illicit deal from Montilla's ears. Indeed Zorrilla [another conspirator] loudly bragged about the purity of the cocaine in front of Montilla.") Further, in some other tapes the defendant himself speaks in coded language about drugs, drug transactions and drug money. Overall, the court is left with the clear impression that a reasonable juror could find that defendant is a narcotic conspirator.

Furthermore, in the instant case (99-308) the U.S. Attorney proffered[4] that four cooperating witnesses will testify, at least two of which will testify as to direct dealings with codefendant who purchased large amounts of cocaine and marihuana from them. Further, the cooperators purchased narcotics from the codefendant. The cooperators will further testify as to having delivered drug money and narcotics to the defendant. The cooperators will also testify that defendant was part of an organization wherein he would contribute large sums of money to import cocaine and marihuana from the Dominican Republic. Codefendants in the conspiracy where involved in trips to the Dominican Republic for the purpose of transporting and importing the drugs.

Although the tapes do not involve evidence as to the importation of drugs, the tapes point to defendant as a drug conspirator/dealer thus providing reasonable credibility at this bail stage to the proffer made by the United States as to the cooperators' statements.

Considering the criteria that the court must consider under 18 U.S.C. 3142(g) "the nature and circumstances of the case" favors detention because defendant stands accused of a very serious charge, (importa-

---

**4.** A detailed proffer was made to the undersigned at the De Novo Hearing (Docket No. 69 at 41-42); the Magistrate Judge was prior thereto informed at the bail hearing as to the existence of the cooperators incriminating the defendant.

 

tion and distribution of large quantities of narcotics), and the "weight of the evidence" seems very strong against the defendant, (incriminating tapes and cooperators' statements). The court understands that some of the elements of "history and characteristics of the individual" as is the fact that codefendant has no prior conviction and that he may have strong family ties and that he voluntarily surrendered unquestionably favor the defendant. Other characteristics as "past conduct" do not favor the defendant because he is precisely currently being charged with a drug long duration conspiracy from 1991 until 1998. Evaluating all the criteria as a whole, "the nature and circumstances of the offense," "the weight of the evidence" override the remaining criteria of the "characteristics of the person." Furthermore, in this particular case wherein the defendant is alleged to have financed drug importation operations from Santo Domingo, the warning of Congress that "flight to avoid prosecution ... in major drug offenses" is particularly applicable. *United States v. Palmer-Contreras*, 835 F.2d 15, 17. Further, the caution of Congress as to the "established ties [of drug traffickers] outside the United States" is strongly relevant in this case favoring the Detention Order because of flight risk. Flight risk increases in this particular case because of the length of the potential imprisonment term together with the strength of weight of the evidence.

Moreover, the presumption of danger to the community is present in the instant case because "it is clear [that] the harm to society caused by narcotic trafficking is encompassed within Congress' definition of 'danger.'" *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir.1985).

The conclusion is inescapable, codefendant Joseph Capella Quiñones has failed to rebut the presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. 3142(e). The evidence preponderates in favor of detention. **The Detention Order of Magistrate Judge J. Antonio Castellanos is SUSTAINED. The defendant is to remain detained without bail.**[5]

IT IS SO ORDERED.

---

5. The court notes that in case # 99–161, Magistrate Judge Arenas, also ordered the detention without bail of the defendant; said detention order had not been challenged to the date of the de novo hearing in the instant case.