**UNITED STATES of America,**
**Plaintiff,**

v.

**Victor HILARIO–REYES, Defendant.**

**CRIMINAL NUMBER: 02–182(JAG).**

United States District Court,
D. Puerto Rico.

Aug. 9, 2002.

Warren Vazquez, United States Attorney's Office, Hato Rey, PR, for Plaintiff.

Luis R. Rivera–Rodriguez, Hato Rey, PR, for Defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Codefendant Victor Hilario–Reyes has moved the Court to revisit Magistrate Judge Justo Arenas's order detaining him without bail. (Docket No. 7.) Magistrate Judge Arenas concluded that there was probable cause to believe that Hilario–Reyes had committed an offense with a maximum term of imprisonment of more than ten years under 21 U.S.C. § 841(a)(1), and that he had failed to rebut the statutory presumption of detention (since no condition or combination of conditions would reasonably assure his appearance at trial). The Magistrate Judge further found that there was a serious risk that Hilario–Reyes would not appear if granted bail. Upon review of the record, and following a *de novo* bail hearing held on July 3, 2002, the Court *denies* Hilario–Reyes's motion.

The Court is required to make a *de novo* review of the contested Detention Order. *United States v. Tortora,* 922 F.2d

880, 883 n. 4 (1st Cir.1990).[1] The analysis begins with the May 15, 2002 indictment, which states that Hilario–Reyes is charged with a conspiracy to possess with the intent to distribute in excess of five kilograms of cocaine, and with the substantive offense of possession with intent to distribute eight kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841.

The Bail Reform Act of 1984, 18 U.S.C. § 3142(f)(1)(C) and (e), establishes the presumption that no condition or combination of conditions will reasonably assure the appearance of the accused as required and the safety of the community if there is probable cause to believe that the person committed an offense for which the term of imprisonment of ten or more years is prescribed in the controlled substance Act, 21 U.S.C. § 801. *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir.1991). Here, the presumption is triggered because the quantities of drug alleged in the indictment mandate a ten-year minimum sentence. 21 U.S.C. §§ 801 *et seq.*

The legal presumption has a "significant practical effect." *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985). The presumption, however, does not shift the burden of persuasion to the defendant; the government retains its burden throughout. Once the presumption is triggered, however, the defendant is required to carry the burden of production. *Id.* at 380–384.

The presumption established is that "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which the maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, (21 U.S.C. § 801 *et seq.*)" 18 U.S.C. 3142(e). The presumption created is of "flight" and "danger." *Id.* at 381.

Once the presumption is triggered, the defendant is required to produce "conflicting evidence" to undercut the legislative purpose of the presumption. *Id.* at 383. *Jessup* adopted an "intermediate position," requiring the defendant to produce "conflicting evidence" as to "danger" and "flight." · The Court then "determine[s] on which side the evidence preponderates." *Id.* (citing *Wright v. State Accident Ins. Fund,* 289 Or. 323, 613 P.2d 755, 759–60 (1980)).

The Court in *Jessup* explained that "[i]n order to 'rebut' the presumption, the defendant must produce some evidence; the magistrate or judge should then still keep in mind the fact that Congress has found that [drug] offenders, as a general rule, pose special risks of flight." Even after a defendant has produced evidence to rebut the presumption, "the presumption does not disappear, but rather retains evidentiary weight—the amount depending on how closely defendants' case resembles the Congressional paradigm, at 387—to be considered with other relevant factors." *United States v. Palmer–Contreras,* 835 F.2d 15, 17 (1st Cir.1987).

Finally, in making its determination after receiving the rebuttal pursuant to section 3142(g), the judicial officers must consider, among other factors, "the nature and circumstance of the offense," "weight of the evidence," "history and characteristics of the person including ... character, physical and mental conditions, family history ... past conduct." *Id.*

---

**1.** The Court also notes Judge Robert Keeton's enlightened opinion in *United States v. Phillips,* 732 F.Supp. 255, 258–59 (D.Mass.1990), requiring "the Court to exercise independent consideration of all facts properly before it."

In the indictment, the Government charges Hilario–Reyes with participation in a drug conspiracy to possess, with intent to distribute, illegal narcotics. The Government proffered evidence that Hilario–Reyes participated in a drug smuggling operation that resulted in the seizure of eight kilograms of cocaine on May 21, 1999. On April 29, 1999, DEA agents detained two suspects in connection with the seizure of 26 kilograms of cocaine contained inside a parcel shipment sent via U.P.S. from St. Lucia to Puerto Rico the previous day. The two suspects admitted that they were the people who received, packaged, and sent the seized cocaine. The two suspects thereafter agreed to serve as cooperating witnesses for the government, and provided information that was later corroborated through subsequent investigations.

On May 18, 1999, one of those cooperating witnesses informed the authorities that he/she had received approximately eight kilograms of cocaine from Hilario–Reyes, among others. Hilario–Reyes arrived in a 1995 Ford Windstar with another passenger. One of the passengers activated an electronic concealed compartment on the driver's side of the minivan and extracted two kilograms of cocaine. That passenger subsequently gave the cocaine to Hilario–Reyes, among others. Later that evening, another alleged conspirator gave eight kilograms of cocaine (Hilario–Reyes's cocaine included) to the cooperating witness. The alleged conspirator instructed the cooperating witness to secure the cocaine until the next day, so that they could thereafter package and ship it to New York.

On May 21, 1999, the DEA seized three boxes at JFK Airport in New York. The boxes contained eight kilograms of cocaine. One of the cooperating witnesses advised the DEA agents that he/she observed Hilario–Reyes in the baggage claim area. The authorities had trouble locating Hilario–Reyes, but they eventually found and arrested him on April 1, 2002 in New York, as he returned from the Dominican Republic.

Hilario–Reyes contends that, between 1999 and 2002, he traveled to and from the Dominican Republic, New York, and Puerto Rico, and never tried to hide or abscond to avoid detention. He further alleges that he worked as a window installer and as a farm worker between 1999 and 2002. He contends that his consensual wife, Isenelys Tapia, is willing to act as third-party custodian for him, and that he would be living with Tapia and with Doris Perez, Tapia's niece, in Santurce, Puerto Rico. He would consent to 24–hour monitoring through an electronic monitoring device.

Hilario–Reyes also proffered (1) that his consensual wife had equity on a property totaling approximately $100,000 and could post it as surety; (2) that he had strong community ties; and (3) that he has had a permanent residence since 1996 and that he resided temporarily with Julio Tapia, a friend (and his consensual wife's brother), in Brooklyn, New York.

The Court held a *de novo* bail hearing on July 3, 2002, and heard testimony from Tapia, as well as from DEA Special Agent Jesus Roberto Gonzalez. (Docket No. 27.) During the hearing, an issue arose regarding whether Julio Tapia was involved in drug trafficking, an issue that defendant's counsel conceded was important, since Hilario–Reyes admittedly lived in Tapia's home for some time. (Docket No. 27 at 86.) Both parties agreed to have the Court conduct an *in camera* inspection of certain DEA documents which agent Gonzalez relied upon when stating that Tapia was involved in drug trafficking. The Court has reviewed those materials, and concludes that they support Agent Gonzalez's testimony.

Given the criteria that the Court must consider to ultimately grant or deny bail, in this case "the nature and circumstances of the case" favor detention. Hilario–Reyes stands accused of a very serious charge—possession with intent to distribute cocaine. The weight of the evidence appears to be quite strong. Moreover, the amount of narcotics involved in this case potentially exposes Hilario–Reyes to a term of imprisonment of not less than ten years. The Court acknowledges that some of the elements of Hilario–Reyes's history and characteristics, such family and community ties, weigh in favor of a grant of bail. Evaluating all the criteria as a whole, the nature and circumstances of the offense and the weight of the evidence override the favorable criteria rooted in characteristics of the person. In the Court's view, these circumstances would pose a danger to the community should Hilario–Reyes be released on bail.

In sum, bail is not warranted in this case. Here the drug amounts are significant, the Government's case appears to be strong, and the length of the jail sentence, coupled with Hilario–Reyes's apparent ties to other drug traffickers, all point to a risk of flight. The standard of proving "flight risk" by preponderance of the evidence, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir.1991) and of "danger" to the community by "clear and convincing evidence," *United States v. Salerno*, 481 U.S. 739, 750, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), has been met.

Furthermore, the presumption of danger to the community is present in this case since "it is clear [that] the harm to society caused by narcotic trafficking is encompassed within Congress' definition of 'danger'." *United States v. De León*, 766 F.2d 77, 80 (2d Cir.1985). *See generally Palmer–Contreras*, 835 F.2d at 17–18 (affirming a detention order under the

§ 3142(e) presumption, notwithstanding defendant's strong family ties, because of the long duration of the conspiracy). The facts here fall squarely within the congressional concern that "flight to avoid prosecution is particularly high among persons charged with major drug offenses" and that "drug traffickers often have established ties outside the United States … [and] have both the resources and foreign contacts to escape to other countries." *Jessup*, 757 F.2d at 384.

The conclusion is inescapable: Hilario–Reyes has failed to rebut the presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. 3142(e). The evidence preponderates in favor of detention. *Jessup*, 757 F.2d at 383.

**The Detention Order of Magistrate Judge Justo Arenas is AFFIRMED. Victor Hilario–Reyes is to remain detained without bail.**

IT IS SO ORDERED.