No. 52 August 4, 2016 155

IN THE SUPREME COURT OF THE
STATE OF OREGON

In the Matter of the Compensation of
Roger J. Thompson, Claimant.
SAIF CORPORATION
and Clackamas County Fire District #1,
*Respondents on Review,*

*v.*

Roger J. THOMPSON,
*Petitioner on Review.*

(WCB 10-06391; CA A152618; SC S063020)

On review from the Court of Appeals.*

Argued and submitted November 12, 2015.

Nelson R. Hall, Bennett Hartman Morris and Kaplan, Portland, argued the cause for petitioner on review.

Julie Masters, Appellate Counsel, SAIF Corporation, Salem, argued the cause and filed the brief for respondents on review.

Sara Ghafouri, Haglund Kelley, LLP, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Sarah K. Drescher, Tedesco Law Group, Portland, filed the brief for *amicus curiae* International Association of Fire Fighters. With her on the brief were Thomas A. Woodley, David Ricksecker, and Sara A. Conrath, Woodley & McGillivary, Washington, D.C.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, Brewer, and Nakamoto, Justices.**

KISTLER, J.

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is affirmed.

_____

\* On judicial review of an order of the Workers' Compensation Board, dated September 7, 2012. 267 Or App 356, 340 P3d 163 (2014).

\*\* Linder, J., retired December 31, 2015, and did not participate in the decision of this case.

**KISTLER, J.**

The question in this workers' compensation case is how a statutory presumption, colloquially known as the "firefighters' presumption," applies. *See* ORS 656.802(4) (stating that presumption).[1] In this case, no one disputes that claimant proved the predicate facts, which gave rise to a presumption that his heart attack "result[ed] from" his work as a firefighter and thus was an occupational disease. *See id.* No one also appears to dispute that the effect of the presumption was to shift the burden of persuasion to SAIF to prove by clear and convincing evidence that "the cause of [claimant's] condition [wa]s unrelated" to his work as a firefighter. *See id.* (stating that requirement).

After considering SAIF's medical evidence, the Workers' Compensation Board (board) found that the evidence did not satisfy SAIF's burden of persuasion and entered an order finding that claimant's heart attack was a compensable occupational disease. The Court of Appeals reversed. *SAIF v. Thompson*, 267 Or App 356, 340 P3d 163 (2014). It reasoned that the board had implicitly and incorrectly concluded that only one type of medical evidence (evidence of risk factors unique to the claimant and unrelated to his work) would rebut the presumption. *Id.* at 364-65. Having determined that the board applied an incorrect legal rule, the Court of Appeals reversed its order. *Id.* at 367. We allowed claimant's petition for review and now conclude that the Court of Appeals misperceived the basis for the board's order. We also conclude that the board reasonably found, on the evidence before it, that SAIF had failed to satisfy its

---

[1] ORS 656.802(4) provides:

"Death, disability, or impairment of health of firefighters of any political division who have completed five or more years of employment as firefighters, caused by any disease of the lungs or respiratory tract, hypertension or cardiovascular-renal disease, and resulting from their employment as firefighters is an 'occupational disease.' Any condition or impairment of health arising under this subsection shall be presumed to result from a firefighter's employment. However, any such firefighter must have taken a physical examination upon becoming a firefighter, or subsequently thereto, which failed to reveal any evidence of such condition or impairment of health which preexisted employment. Denial of a claim for any condition or impairment of health arising under this subsection must be on the basis of clear and convincing medical evidence that the cause of the condition or impairment is unrelated to the firefighter's employment."

burden of persuasion. We accordingly reverse the Court of Appeals decision and affirm the board's order.

Before setting out the facts in this case, we first describe the statutory context in which the case arises. Ordinarily, workers seeking compensation for an "occupational disease" must "prove that employment conditions were the major contributing cause of the disease." ORS 656.802(2)(a); *see also* ORS 656.802(1) (defining "occupational disease"). However, in 1961, the Oregon Legislature adopted a statutory presumption that, if the claimant established certain predicate facts, the claimant's condition resulted from his or her employment and was an occupational disease. *See* Or Laws 1961, ch 583, § 1. Proponents of the bill explained that, according to statistical studies, firefighters are more likely than other occupations to develop heart and lung diseases, due to smoke and gas exposure in strenuous conditions, and that firefighters should not bear the burden of demonstrating that a disease or condition was caused by firefighting. *See* Minutes, Senate Labor and Industries Committee, HB 1018, Mar 8, 1961. The legislature accordingly established a "disputable presumption" that firefighting causes certain types of occupational diseases. *See* Minutes, House Labor and Industries Committee, Feb 2, 1961, p 2. The legislature amended the statute in 1977 by clarifying that a claim could be denied "on the basis of medical or other evidence that the cause of the fireman's condition or impairment [was] unrelated" to firefighting. *See* Or Laws 1977, ch 734, § 1 (so providing).

In *Wright v. SAIF*, 289 Or 323, 613 P2d 755 (1980), this court explained that the statute, as amended in 1977, created a disputable presumption, that the effect of the presumption was to shift the burden of production to the employer, and that, if an employer met its burden of production, then the trier of fact had to determine which way the evidence preponderated. *Id.* at 331-32.[2] The court did not decide whether the presumption also shifted the burden of persuasion to the employer; rather, the court left open the

---

[2] As we read *Wright*, the court used the phrase "disputable presumption" as a synonym for "rebuttable presumption." *See Wright*, 289 Or at 331-32; *cf. State v. Dahl*, 336 Or 481, 486, 87 P3d 650 (2004) (discussing rebuttable presumptions).

question of what effect the presumption would have if the evidence were in equipoise. *Id.* at 331 n 5. It noted that the members of what was in that case a four-person court were equally divided on that question. *Id.*

In 1983, the legislature addressed the question that the court had left open in *Wright.* At the request of the Oregon State Fire Fighters Council, Representatives Whallon and Gold introduced House Bill (HB) 2700 (1983). As originally introduced, HB 2700 would have made the firefighters' presumption conclusive; that is, if a firefighter suffered from a heart or lung condition, established that he or she had served as a firefighter for at least five years, and proved that a physical examination failed to reveal that the condition preexisted the firefighter's employment, then it would be conclusively presumed that the condition resulted from employment. Bill File, HB 2700, Mar 30, 1983.

A representative of the Oregon State Fire Fighters Council explained that the presumption should be conclusive because some "medical practitioners * * * do not believe that physical and mental stress causes heart disease." Testimony, House Committee on Labor, HB 2700, Mar 30, 1983, Ex E (statement of Tom Whelan). In the Council's view, employers could defeat the current presumption by simply finding "one or more physicians to say that in their opinion the condition did not result from the workplace." *Id.*

Representatives from local governments opposed making the presumption conclusive. The personnel director for the City of Salem testified that a conclusive presumption would increase the number of compensable claims because cities and other employers would be unable to show that a firefighter's cardiovascular or pulmonary disease was "primarily the result of non-firefighting employment related risk factors such as outside employment, smoking, hypertension, heredity, [gender], obesity, sedentary lifestyle and age." Testimony, House Committee on Labor, HB 2700, Apr 13, 1983, Ex E (statement of Darrell Dearborn). He explained that "[o]ur princip[al] concern with this bill is that it removes in total any possibility that medical evidence can be introduced to challenge compensability." *Id.* Similarly, the Assistant City Attorney for the City of Salem

argued that a conclusive presumption would establish "a rule of law, not a factual presumption[,] *** [meaning that an] employer can submit no evidence of any other contributing factors to the firefighter's condition, such as heredity, or a lifetime of heavy smoking to support a denial of the claim." Testimony, House Committee on Labor, HB 2700, Apr 13, 1983, Ex F (statement of Jeannette Launer).

In response to those concerns, the Oregon State Fire Fighters Council offered an amendment to "clarify the bill and deal with the concerns of the opponents." Minutes, House Committee on Labor, Subcommittee on Workers' Compensation Benefits, HB 2700, Apr 20, 1983, p 2. The amended bill no longer made the presumption conclusive. It provided that, if the claimant proved certain predicate facts, it would be presumed that the claimant's condition resulted from his or her employment as a firefighter. Employers could deny a claim only "on the basis of clear and convincing medical evidence that the cause of the condition or impairment is unrelated to the [firefighter's] employment." Bill File, HB 2700, A-Engrossed Bill, Apr 19, 1983. The bill, as amended, passed both houses and was signed by the governor.

The 1983 amendment made two propositions clear. First, if a claimant proved the predicate facts, then the presumption shifted both the burden of production and the burden of persuasion to the employer to prove that the claimant's "condition or impairment is unrelated to the firefighter's employment." Second, the employer must prove that fact by clear and convincing evidence.[3] The text and the legislative history, however, do not provide as clear an answer to the question that the Court of Appeals addressed in this case—whether only evidence of individual risk factors that are unrelated to employment may be offered to meet the employer's burden.[4]

---

[3] In increasing the standard of proof to clear and convincing evidence, the 1983 amendment did not change the type of the evidence necessary to satisfy the burden of persuasion. For a cogent explanation of how standards of proof allocate risk and the public policies underlying those choices, see *In re Winship*, 397 US 358, 368-372, 90 S Ct 1068, 25 L Ed 2d 368 (1970) (Harlan, J., concurring).

[4] The usual sources of legislative intent look in different directions on that issue. On one hand, the text of the amended statute refers to "medical evidence" without limitation. On the other hand, the employers' testimony that persuaded

In summary, ORS 656.802(4), as amended in 1983, provides that a claimant must prove three predicate facts to establish the firefighters' presumption: (1) the claimant was employed for five or more years as a firefighter for a political division; (2) the claimant's death, disability, or impairment of health was caused by one of the listed diseases; and (3) a physical exam failed to reveal that the condition or impairment preexisted employment. If a claimant proves those predicate facts, then the statute establishes a rebuttable presumption that the condition or impairment "result[ed] from [the] firefighter's employment" and is an "occupational disease." ORS 656.802(4). The burden of both production and persuasion then shifts to the employer to prove by "clear and convincing medical evidence that the cause of the condition or impairment is unrelated to the firefighter's employment." *Id.*

With that background in mind, we turn to the facts in this case. Claimant began working as a firefighter in 1991. In 2010, at the age of 44, claimant felt chest discomfort while using a treadmill and an elliptical machine at the fire station. Two days later, while off duty, he experienced muscular discomfort in his chest and neck, which prompted him to seek medical treatment. Claimant's cardiologists concluded that he had had a heart attack, and they determined that the heart attack was caused by atherosclerosis—essentially, a blocked artery due to coronary artery disease. The cardiologists successfully treated claimant with angioplasty and stenting of the artery.

Claimant had no prior indication of cardiovascular disease. He had had a physical examination before his employment as a firefighter and also periodic physical examinations after he began working as a firefighter. None of those examinations revealed evidence of cardiovascular disease. Furthermore, claimant's cardiologists determined that he had no known family history of cardiovascular disease or common risk factors for cardiovascular disease,

---

the 1983 legislature to make the presumption rebuttable focused on the need to present one type of medical evidence—individual risk factors unrelated to work—to rebut the presumption. However, no witness expressly addressed whether that type of medical evidence was the only medical evidence that an employer could use to rebut the presumption.

such as diabetes, obesity, high cholesterol, hypertension, or tobacco use.

Following his heart attack, claimant filed a workers' compensation claim on the ground that his underlying cardiovascular condition—atherosclerosis—resulted from his employment as a firefighter and was a compensable occupational disease. Claimant did not offer any medical evidence to prove that his work caused his atherosclerosis. Rather, he relied on the firefighters' presumption. *See* ORS 656.802(4). Claimant contended, and SAIF did not dispute, that claimant had established the predicate facts: he had been employed for at least five years as a firefighter; he had a cardiovascular disease; and his physical examinations failed to reveal that his condition preexisted his employment.

After receiving his claim, SAIF asked claimant to undergo an independent medical examination by Dr. Semler. Semler examined claimant and also reviewed his medical records. Semler issued a report that began by setting out the question that Semler understood he had been asked to address:

> "Because this worker is filing a claim for an occupational disease, he must establish that his life long work exposure is the most significant factor in the development of his condition. In other words, work by itself must outweigh the significance of all other pertinent factors combined. We are asking you to determine the major cause of the condition[.]"[5]

In answering that question, Semler explained that "[t]he exact etiology for atherosclerosis is not definitely known." He noted that, in reviewing the medical literature, he had "not found any scientific evidence that firefighting per se leads to atherosclerosis or hardening of the arteries." He identified certain "theories" as to why a person's arteries might become blocked but found that none applied in claimant's case. After observing that "[a]therosclerosis is more in keeping with the aging process in [claimant's] case," he concluded that "it is highly probable that [claimant's] work as a firefighter is not the major contributing cause of his cardiac condition."

---

[5] Semler's report appears to be paraphrasing a legal standard supplied to him by the entity that had requested the report.

Based on Semler's report, SAIF denied the claim. Claimant requested a hearing before the Hearings Division of the Workers' Compensation Board. Semler testified at that hearing.[6] Much of his testimony was devoted to providing background information regarding atherosclerosis and heart attacks. Beyond that, his testimony reduced to three propositions. First, Semler explained that atherosclerosis starts as "a fatty deposit called a 'fatty streak.'" The appearance of a fatty streak indicates the existence of a disease process or an injury to the inner lining of the artery. However, what causes the injury to the artery or the disease process to begin is not known.[7] Once the streak appears plaque attaches to it and builds up over time. The plaque can cause a heart attack either because it builds up to such an extent that it obstructs the artery (as in claimant's case) or because a piece of the plaque breaks off and blocks the artery that way.

Second, Semler testified that there are risk factors that contribute to the development of atherosclerosis. They include obesity, smoking, high blood pressure, high cholesterol, diabetes, and family history. Claimant did not exhibit any of those risk factors. Rather, Semler concluded in his report that "[a]therosclerosis is more in keeping with the aging process in [claimant's] case." As noted, claimant was 44 years old when he suffered a heart attack.

Third, Semler testified that he could not say, based on the medical evidence, that firefighting caused atherosclerosis. Alternatively, he testified that firefighting "did not play any role in [claimant's] development of atherosclerosis." He explained the basis for that opinion:

"I've never seen a paper that said firefighting caused atherosclerosis. It's not one of the things that doctors or cardiologists would list. I just listed all of the potential causes;

---

[6] Claimant's treating cardiologist, Dr. Dawley, also testified at the hearing. The board reasonably found that Dawley's testimony was equivocal regarding the cause of claimant's atherosclerosis and thus insufficient to rebut the presumption. Accordingly, we summarize only Semler's testimony, which was the focus of the Court of Appeals' reasoning.

[7] In addition to stating in his report that the exact etiology of atherosclerosis is not definitely known, Semler agreed on cross-examination that "the cause of laying down of the fatty streaks *** [is] still unknown."

diabetes, obesity, hypertension, high cholesterol, family history. But firefighting, I've never seen a paper that said firefighting caused atherosclerosis."

Given the foregoing reasoning, Semler agreed on direct examination that claimant's condition was "unrelated to his employment as a firefighter."

The Administrative Law Judge (ALJ) found that SAIF had "presented sufficient evidence to overcome the presumption by clear and convincing evidence" and upheld SAIF's denial of the claim. The board reversed. We quote the board's reasoning in full because the Court of Appeals concluded that, in finding that SAIF had not met its burden of persuasion, the board applied an incorrect legal standard. The board reasoned:

> "Dr. Semler was unaware of 'any scientific evidence that firefighting per se leads to atherosclerosis ***.' Dr. Semler conceded that the 'cause [of] atherosclerosis is still debatable,' but asserted that the 'current consensus' related atherosclerosis to 'a multitude of factors[,] such as cholesterol disorder, diabetes, smoking, hypertension, family history and other factors *** [,] including being sedentary.' Dr. Semler ultimately opined that claimant's employment as a firefighter played 'no role whatsoever' in his atherosclerosis and heart attack.

> "We are not persuaded, however, that Dr. Semler's opinion satisfies SAIF's 'clear and convincing' burden to overcome the statutory presumption. Dr. Semler conceded that the cause of atherosclerosis is unknown. Despite that concession, Dr. Semler ruled out any contribution from claimant's employment as a firefighter. Dr. Semler did not persuasively explain, however, how he was able to make such a categorical exclusion, given that the causes of that condition were unknown. The lack of such a persuasive explanation is particularly significant, given that the record does not establish that claimant had any identified 'risk factors' for atherosclerosis.

> "In sum, after weighing the evidence, we find that SAIF has not established, by clear and convincing medical evidence, that the cause of claimant's heart attack is unrelated to his employment."

(Ellipses and brackets in original; citations omitted.)

The Court of Appeals reversed. It recognized that the board had stated that SAIF had failed to meet its burden of persuasion. 267 Or App at 363. The court concluded, however, that the board implicitly had applied an incorrect legal rule. The court reasoned that, "because [Semler's] explanation was not met with contrary evidence or criticized by the board," the board must have "viewed Semler's opinion as inadequate to overcome the presumption because it lacked proof of the ultimate cause of claimant's atherosclerosis." *Id.* at 364. That is, the Court of Appeals read the board's order as requiring proof of individual risk factors unrelated to the claimant's work, such as diabetes, tobacco use, or high cholesterol, to rebut the presumption. That legal rule, the Court of Appeals reasoned, was at odds with its decision in *[Long v. Tualatin Valley Fire](#)*, 163 Or App 397, 987 P2d 1267 (1999).[8] The court accordingly reversed the board's order. *Thompson*, 267 Or App at 367.[9]

On review, the parties raise two related but separate issues. Relying primarily on cases from other states, claimant and his *amici* argue that SAIF may not rely on medical evidence that, as a general matter, atherosclerosis is unrelated to firefighting to rebut the firefighters' presumption. They contend that SAIF may rebut the presumption only with evidence that claimant's atherosclerosis was caused by individual risk factors unrelated to his work, such as diabetes, high cholesterol, or obesity. Under that standard, claimant contends, we should affirm the board's order. Alternatively, claimant argues that, even if SAIF may rely on testimony that atherosclerosis generally is unrelated to

---

[8] In *Long*, three doctors had testified that the cause of the firefighter's heart condition was not known but that the condition was not related to his work. 163 Or App at 399, 401. The board found that that evidence rebutted the presumption, and the Court of Appeals upheld its order. *Id.* Because the board upheld the employer's denial, the only question before the court in *Long* was whether the employer's evidence was sufficient to meet the employer's burden of production. The Court of Appeals limited its holding to that question. *See id.* at 401.

[9] Ordinarily, if the board applied an incorrect legal standard, the appropriate disposition would be to reverse the board's order and remand the case to the board to apply the correct standard. The Court of Appeals, however, concluded that Semler's unrebutted testimony necessarily established by clear and convincing evidence that claimant's condition was unrelated to his work. *See Thompson*, 267 Or App at 367.

firefighting, the board reasonably found that Semler's testimony did not meet SAIF's burden of persuasion.

We read the board's order differently from the Court of Appeals. As we read its order, the board did not rule that only evidence of individual risk factors unrelated to claimant's employment may be used to rebut the firefighters' presumption. Rather, the board recognized that Semler's testimony was sufficient to meet SAIF's burden of production; however, it found that Semler's testimony was internally inconsistent and, for that reason, failed to meet SAIF's burden of persuasion. It follows that this case does not present the first issue that claimant and his *amici* raise. It only presents the second.[10]

In explaining why we read the board's order differently from the Court of Appeals, we begin by identifying the legal standard that the board applied. In its order, the board started its analysis by explaining, "We are not persuaded * * * that Dr. Semler's opinion satisfies SAIF's 'clear and convincing' burden." The board explained why it was not persuaded and then concluded by stating, "In sum, after weighing the evidence, we find that SAIF has not established, by clear and convincing evidence, that the cause of claimant's heart attack is unrelated to his employment."

Taking the board at its word, we find it difficult to say that the board did anything other than what ORS 656.802(4) directed it to do once claimant established, by means of the firefighters' presumption, that his atherosclerosis "result[ed]" from his employment as a firefighter: The board asked whether SAIF had persuaded it by clear and convincing medical evidence that claimant's atherosclerosis was "unrelated" to his employment. The board neither said nor intimated that only evidence of individual risk factors unrelated to claimant's work could be considered in finding whether SAIF had met its burden of persuasion.

_____

[10] Even though this case does not require us to reach the first issue that claimant raises, we note that the answer to that issue turns primarily on the text, context, and legislative history of ORS 656.802(4). That is, whether ORS 656.802(4) limits the type of medical evidence that employers may use to rebut the presumed fact is first and foremost a question of legislative intent. *Cf. State v. Stockfleth/Lassen*, 311 Or 40, 50, 804 P2d 471 (1991) (explaining when cases from other jurisdictions will be context that bears on a statute's meaning).

The Court of Appeals, however, reasoned that, given Semler's unrebutted testimony, the board must have rejected that testimony because Semler had not identified any individual risk factor (hypertension, diabetes, etc.) as the cause of claimant's condition. In our view, the Court of Appeals gave too much credit to Semler and too little credit to the board. Put differently, the board reasonably could (and did) find that Semler's report and his testimony were not persuasive, without resorting to the legal rule that the Court of Appeals attributed to it.

In explaining why we reach that conclusion, we begin with Semler's report. As discussed above, Semler issued a written report in which he opined that firefighting was not the major contributing cause of claimant's atherosclerosis. The primary difficulty with Semler's report is that he asked and answered the wrong question. Because claimant proved the predicate facts necessary to establish the firefighter's presumption, ORS 656.802(4) presumed that his atherosclerosis "resulted from" his employment and was an occupational disease. The question accordingly was not whether claimant's employment was the major contributing cause of his condition; it was whether his condition was "unrelated to [his] employment." ORS 656.802(4). Those are two separate questions. The fact that claimant's employment was not the major contributing cause of his condition, as Semler concluded in his report, does not mean that his condition was unrelated to his employment.[11] For that reason alone, the board reasonably could have discounted the persuasive value of Semler's report.

The board also had Semler's testimony before it. As noted, that testimony reduced to three propositions. The first proposition that Semler identified—that the causes of atherosclerosis are unknown—provides no persuasive evidence

---

[11] The same problem filtered through Semler's testimony. Not only did Semler repeat once in his testimony before the ALJ that the medical literature did not establish that firefighting was the major contributing cause of atherosclerosis, but even his more carefully articulated conclusions suffered from a similar logical flaw. The fact that, as Semler repeatedly stated, the medical literature did not prove that firefighting causes atherosclerosis does not necessarily mean that it proves that firefighting is "unrelated" to atherosclerosis. The former proposition may give rise to a weak inference of the latter, but Semler repeatedly appeared to equate the two.

that claimant's condition was unrelated to his employment, or so the board could find. As this court explained in *Wright*, a diagnosis that a "claimant's condition is 'idiopathic,' or of unknown origin" is "simply a confession of an inability to identify a cause of [the] claimant's impairments rather than evidence that [the] claimant's condition or impairment is *unrelated* to his [or her] employment." 289 Or at 332 (emphasis in original).

The second proposition that Semler identified is equally unavailing. As noted, Semler explained that cardiologists had identified some risk factors that are related to the development of atherosclerosis.[12] Semler testified, however, that claimant did not exhibit those risk factors, which simply ruled out the possibility that those risk factors (rather than claimant's work) were the cause of his atherosclerosis. The board reasonably could find that the second proposition that Semler identified provided no persuasive evidence that claimant's condition was unrelated to his work. Contrary to the Court of Appeals' reasoning, we do not understand the board, in ruling out those factors, to have held that only those factors could be used to rebut the presumption that claimant's atherosclerosis resulted from his work.

Finally, Semler opined that atherosclerosis is unrelated to firefighting. In large part, Semler based that opinion on the fact that he could not find in the medical literature a proven connection between firefighting and atherosclerosis. Even if we assume that Semler's opinion was sufficient to meet SAIF's burden of production, the board was not persuaded by his opinion. As the board explained, Semler also testified that the causes of atherosclerosis are not known. The board reasoned that, if cardiologists cannot identify the causes of atherosclerosis, as Semler testified, and if claimant had no apparent risk factors that were unrelated to his work, as Semler also testified, then the basis for Semler's opinion that claimant's atherosclerosis was unrelated to his work was not apparent and, for that reason, was not sufficiently persuasive to meet SAIF's burden of persuasion.

---

[12] Sometimes, Semler referred to the factors as risk factors. Other times, he referred to them as causes of atherosclerosis. Given his testimony that the etiology of atherosclerosis is unknown, we refer to them as risk factors.

As we read the board's opinion, the board evaluated the persuasive value of Semler's opinion and found it lacking. As the board explained, Semler's opinion that atherosclerosis is unrelated to firefighting was at odds with his testimony that the causes of atherosclerosis are unknown. The latter testimony undercut the former, or so the board reasonably could find. As a result, the board permissibly concluded that SAIF had not met its burden of persuasion by clear and convincing evidence. Contrary to the Court of Appeals conclusion, we do not understand the board to have *sub silentio* faulted SAIF for failing to prove that claimant's atherosclerosis was caused by individual risk factors (such as diabetes, high blood pressure, and the like) unrelated to his work.

SAIF, however, argues on review that Semler offered a cogent and clear opinion, which "was legally sufficient to rebut the presumption." We assume that Semler's opinion met SAIF's burden of production. However, we cannot say that the board was required to conclude that Semler's opinion met SAIF's burden of persuasion. There is a difference between saying that there is sufficient evidence to permit the board to find that SAIF met its burden of persuasion and saying that the board was required to make that finding. To put the point in a familiar context, there is a difference between saying that a party has put on sufficient evidence to submit a claim to the jury and directing a verdict in a party's favor on that claim. In this case, even if we assume that Semler's testimony was sufficient to meet SAIF's burden of production, the board reasonably could find, for the reasons the board stated, that Semler's testimony did not meet SAIF's burden of persuasion.[13] The Court of Appeals erred in concluding otherwise.

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is affirmed.

---

[13] It follows that we need not decide the first issue that claimant raises—whether SAIF may rebut the firefighters' presumption only with medical evidence of individual risk factors unrelated to work—to resolve this case. We express no opinion on that issue.