28 February 11, 2026 No. 78

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Compensation of Camille Smicz,
Claimant.

Camille SMICZ,
*Petitioner,*

*v.*

DESCHUTES COUNTY 911 SERVICE DISTRICT,
*Respondent.*

Workers' Compensation Board
2104909;
A182542

Argued and submitted December 20, 2024.

Jodie Anne Phillips Polich argued the cause for petitioner. Also on the opening brief were Law Offices of Jodie Anne Phillips Polich, P.C.; and Bailey Oswald and Bottini, Bottini & Oswald, PC. Also on the reply brief was Law Offices of Jodie Anne Phillips Polich, P.C.

Robert B. Nichols argued the cause for respondent. Also on the brief was Cummins, Goodman, Denley & Vickers, P.C.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.*

ORTEGA, P. J.

Affirmed.

_____
* Lagesen, Chief Judge, *vice* Mooney, Senior Judge.

**ORTEGA, P. J.**

Claimant seeks review of an order of the Workers' Compensation Board (the Board) that determined that claimant had failed to establish that she was entitled to the occupational disease presumption set forth in ORS 656.802(7)(b) (2022), *amended by* Or Laws 2022, ch 8, § 1. In two assignments of error, claimant contends that the Board's interpretation of ORS 656.802(7)(b) constituted legal error, and alternatively, that the Board's determination was not supported by substantial evidence or reason. We conclude that the Board's interpretation of ORS 656.802(7)(b) did not constitute legal error because, based on the text and context of that provision, the statute permits a factfinder to consider all persuasive medical evidence from a psychiatrist or psychologist proffered by either party to determine whether the presumption applies. We further conclude that the Board's order was supported by substantial evidence in the record and substantial reason. Accordingly, we affirm.

To provide context for the facts of this case, we first set out the statutory provision at issue. In this case, claimant sought application of the occupational disease presumption in ORS 656.802(7)(b), which provides that,

> "if a covered employee establishes through a preponderance of persuasive medical evidence from a psychiatrist or psychologist that the covered employee has more likely than not satisfied the diagnostic criteria in the DSM-5 for [PTSD] or acute stress disorder, any resulting death, disability or impairment of health of the covered employee shall be presumed to be compensable as an occupational disease."

With that statutory text in mind, we turn to the facts. The record on review contains a lengthy medical history, the recitation of which will not serve the parties, bench, or bar. Thus, we recite only those facts necessary to explain our disposition.

Claimant worked as a 9-1-1 dispatcher for 20 years. Over her 20 years as a dispatcher, claimant assisted by phone with many alarming and disturbing situations, and she eventually asserted that the "continued exposure to

trauma and critical incidents" led to an occupational disease of "PTSD, secondary trauma, [and] cumulative stress disorder." However, the combined medical history that all three testifying experts relied upon also indicated significant non-work-related stressors that claimant experienced and that had led to her receiving other mental health diagnoses in the past—including that claimant's son had been in residential facilities due to developmental disabilities and violence toward claimant, such as holding a belt across claimant's neck while she was sleeping; that claimant recently went through a divorce that required a restraining order; and that claimant had severe health complications from an unsuccessful surgery.

The three experts differed in their assessment of claimant. Drs. Wicher (a psychologist) and Telew (a psychiatrist) conducted medical evaluations at the request of claimant's employer and could not determine that claimant suffered from PTSD. Wicher concluded that her symptoms better fit the criteria for an adjustment disorder, and upon reviewing her previous diagnoses, concluded that her major depressive disorder and unspecified anxiety disorder developed during the course of her work, "but not largely due to the experiences at work." Telew similarly opined that "[i]t is evident that she does not have sufficient symptomatology to make a diagnosis of PTSD." His analysis included indications that she was exaggerating symptoms, did not have a problem discussing events she identified as traumatic, and did not avoid or even evince a reaction to stimuli that she had identified as causing panic attacks.

Claimant's witness, Dr. Barram (a psychologist), diagnosed her with PTSD after a three-hour exam and a partial review of her medical history. Barram concluded that claimant experiences PTSD, noting that she "encountered multiple traumatic workplace exposures to severe violence and severe safety hazards and has associated intrusive avoidance, negative alterations in thought and mood, and substantial alterations of arousal and reactivity. Additionally, there have been some flashback experiences." During his testimony, Barram described his four-page report as "limited in scope" compared to the vast majority

of his reports, which are generally 12 to 15 pages in length. He agreed that "comprehensive data would logically lead to a more comprehensive and potentially more accurate report."

Claimant's employer denied her claim, and she requested a hearing in front of an Administrative Law Judge (ALJ). The ALJ concluded that claimant had not established by a preponderance of persuasive medical evidence that she was entitled to the presumption under ORS 656.802(7)(b), and thus, upheld the employer's denial. The Board's review followed, and it agreed that claimant did not meet her burden, reasoning that her evidence was not persuasive. The Board found that Barram's opinion "was not based on a complete or accurate history" because he did not review medical records prior to 2020 or any medical records from professionals who diagnosed other disorders instead of PTSD, including the reports of Wicher and Telew. This judicial review followed.

We first address claimant's contention that the Board erred in its interpretation of ORS 656.802(7)(b). Again, that provision provides,

> "if a covered employee establishes *through a preponderance of persuasive medical evidence* from a psychiatrist or psychologist that the covered employee has more likely than not satisfied the diagnostic criteria in the DSM-5 for [PTSD] or acute stress disorder, any resulting death, disability, or impairment of health of the covered employee shall be presumed to be compensable as an occupational disease."

ORS 656.802(7)(b) (emphasis added). Claimant argues that, in establishing the presumption set forth in ORS 656.802(7)(b), only a claimant's persuasive medical evidence should be considered, and that it was therefore improper for the Board to weigh the medical evidence presented by both parties. The Board interpreted the evidentiary standard in ORS 656.802(7)(b) to require that the medical evidence presented by claimant be more persuasive than the contrary evidence. We review the Board's interpretation for legal error. ORS 183.482(8)(a).

When considering a question of statutory interpretation, we look to the statute's text, context, and any helpful legislative history to determine the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

Beginning with the text, the statute states the evidentiary standard a claimant must meet to establish that the presumption applies: the claimant must establish "through a preponderance of persuasive medical evidence from a psychiatrist or psychologist" that the claimant more likely than not meets the criteria for PTSD. ORS 656.802(7)(b). The type of evidence that the factfinder can consider is persuasive medical evidence from a psychologist or a psychiatrist. The text does not limit the factfinder to only considering a claimant's proffered evidence. We will not read a term into the statute that is not present. *See* ORS 174.010 (explaining that the courts are "not to insert what has been omitted, or to omit what has been inserted" when interpreting statutes).

Further, "preponderance of the evidence" is a legal term of art and is defined as:

> "The greater weight of the evidence, not necessarily established by the greater number of witnesses testifying to a fact but by evidence that has the most convincing force; superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other. This is the burden of proof in most civil trials, in which the jury is instructed to find for the party that, on the whole, has the stronger evidence, however slight the edge may be."

*Black's Law Dictionary* 1020 (abridged 9th ed 2010); *see Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014) ("[W]hen a term is a legal one, we look to its established legal meaning as revealed by, for starters at least, legal dictionaries." (Internal quotation marks omitted.)). That understanding of the term "preponderance of the evidence" supports that the legislature intended the factfinder to consider all the evidence in making the determination; otherwise, there would not be a need to determine if the claimant's evidence preponderates.

Claimant urges us to interpret ORS 656.802(7)(b) in a manner consistent with ORS 656.802(4)(a),[1] which applies to firefighters—but that subsection is distinct from the subsection that applies to claimant. In ORS 656.802(4)(a), the legislature provided a presumption that "[a]ny condition or impairment of health arising under this subsection shall be presumed to result from a firefighter's employment." In interpreting that subsection, the Supreme Court held that the firefighter's presumption applies where a claimant establishes that they were employed as a firefighter for five or more years, that their health condition was caused by one of the listed diseases, and that the condition did not predate their employment. *SAIF v. Thompson*, 360 Or 155, 161, 379 P3d 494 (2016)). In contrast to ORS 656.802(7)(b), however, ORS 656.802(4)(a) does not include an evidentiary standard that the claimant must meet before the claimant is entitled to the benefit of the presumption. Thus, claimant's contention that we should interpret the presumption here the same as we have the firefighter's presumption is not supported by the text or context of the statute.

We have also reviewed relevant legislative history, and it also supports our interpretation that ORS 656.802(7)(b) allows the factfinder to consider the claimant's evidence as well as contrary evidence to determine if a claimant has met their evidentiary burden.[2] Thus, we determine that the

---

[1] ORS 656.802(4)(a) provides:

"Death, disability or impairment of health of firefighters of any political division who have completed five or more years of employment as firefighters, caused by any disease of the lungs or respiratory tract, hypertension or cardiovascular-renal disease, and resulting from their employment as firefighters is an 'occupational disease.' Any condition or impairment of health arising under this subsection shall be presumed to result from a firefighter's employment. However, any such firefighter must have taken a physical examination upon becoming a firefighter, or subsequently thereto, which failed to reveal any evidence of such condition or impairment of health which preexisted employment. Denial of a claim for any condition or impairment of health arising under this subsection must be on the basis of clear and convincing medical evidence that the cause of the condition or impairment is unrelated to the firefighter's employment."

[2] The presumption in 656.802(7)(b) was created in 2019 by Senate Bill 507. Following concerns that SB 507, as introduced, was overbroad, *see, e.g.* Testimony, Senate Committee on Workforce, SB 507, Mar 19, 2019 (statements from David Barenberg, Annette Sjullie, and Elaine Schooler), the -8 amendments were introduced. Those amendments made significant changes and, as relevant here, added for the first time an evidentiary standard in order to establish

language "through a preponderance of persuasive medical evidence from a psychologist or psychiatrist" permits the factfinder to consider persuasive medical evidence proffered by both parties to determine whether a claimant established that the presumption under ORS 656.802(7)(b) applies.

In claimant's second assignment of error, she argues that the Board's determination that she did not meet her evidentiary burden was not supported by substantial evidence or reason. We disagree. ORS 183.482(8)(c) requires us to set aside or remand an order that is not supported by substantial evidence in the record. "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). On review, we are not permitted to "reweigh or to assess the credibility of the evidence that was presented to the factfinding body." *WaterWatch of Oregon, Inc. v. Water Resources Dept.*, 324 Or App 362, 382, 527 P3d 1, *rev den*, 371 Or 332 (2023) (internal quotation marks omitted). We do, however, consider "whether the findings provide substantial reason to support the legal conclusion reached by the agency." *Id.* at 384 (internal quotation marks omitted).

In this case, the Board's determination that claimant did not establish by a preponderance of persuasive medical evidence that she more likely than not met the criteria for PTSD is supported by substantial evidence. The Board found that Barram's opinion "was not based on a complete or accurate history" because he did not review the reports of the other diagnosing medical doctors and did not address pertinent medical history. Instead, he limited his review to the reports of three nurse practitioners and a licensed clinical

---

the rebuttable presumption. SB 507 (2019), -8 amendments (Apr 30, 2019). The Senate Committee on Rules heard testimony explaining that "the intent of the bill with the -8 amendments is that [the Board] and its judges are to then consider and weigh opinions of experts saying that the employee has PTSD or Acute Stress Disorder against any opinions of experts saying that the employee does not have such a condition." Testimony, Senate Committee on Rules, SB 507, May 1, 2019 (written testimony from Hasina Wittenberg). The Workers' Compensation Management-Labor Advisory Committee, after reviewing SB 507, also supported passage of the bill with the amendments. Testimony, Senate Committee on Rules, SB 507, May 6, 2019 (statement from Kimberly Wood and Diana Winther, Co-Chairs, Management-Labor Advisory Committee). SB 507 as amended, was passed, and made effective September 29, 2019.

social worker, all occurring after 2020, that did not fully address claimant's medical history. Barram acknowledged that a review of the additional information would likely make for a more accurate report. The Board also found the reports of Wicher and Telew to be "well reasoned and based on complete and accurate histories," and Barram's failure to engage the concerns presented by the contrary evidence bolstered the Board's reasoning. Given the record as a whole and the Board's reasoning, we conclude that substantial evidence and reason supported the Board's determination. *See Zanetti v. City of Portland*, 336 Or App 413, 426, 562 P3d 317 (2024), *rev den*, 373 Or 444 (2025).

Affirmed.